UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 2:17CR138-PPS |
| ) | |
| KEENAN SEYMOUR, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

In an opinion issued February 4, 2021, I ordered the suppression of statements Keenan Seymour made to Chicago police officers and an Assistant State's Attorney on December 1, 2017, during the Chicago Police Department's investigation into the shooting death of Manuel Salazar a week earlier on November 24. [DE 824 at 22-23.] Seymour now moves to suppress certain statements made by another individual believed to be present during the drive-by shooting, Deandre McGowan. Salazar was killed when the Grand Prix he was riding in was fired upon by an occupant of another vehicle, an Oldsmobile Alero. Salazar's girlfriend told Chicago Police that she had seen four people in the Alero, two in the front and two in the rear seat. The same day as the shooting, police in Hammond, Indiana made a traffic stop of an Oldsmobile Alero of the same description. (Hammond is just over the state line and near the location of the shooting in Chicago). At that time, the four occupants of the Alero were Justin Anaya, Alec Aguilar, Keenan Seymour and Deandre McGowan.

On November 30, Aguilar was questioned about the shooting. He admitted that he had been driving the Alero, and confirmed that Anaya, Seymour and McGowan had been in the car. Aguilar was taken into custody. Also on November 30, Deandre McGowan was interviewed, first at his home and then after being taken to Chicago's Area South police station. At that time, McGowan said that he and Seymour had been in the backseat of the Alero when Salazar was shot, that Aguilar had been driving with Anaya in the front passenger seat, and that Aguilar had been the shooter.

After the interviews of Seymour on December 1 (the subject of the February 4, 2021 suppression order), Chicago Police spoke to McGowan again on December 2, and questioned him about "the discrepancies and significant different information he had provided" on a number of issues. [DE 983 at 3.] This time McGowan said that he had seen Seymour (not only Aguilar and Anaya) make gang signs at the Grand Prix. [*Id*.] Seymour argues that the statements made by McGowan on December 2, to the extent that they constitute new admissions or significant changes as compared to his statements earlier on November 30, should be suppressed (including in the form of testimony from the witness stand) because they are "fruit of the poisonous tree" of Seymour's suppressed statements from December 1. [DE 983 at 4; DE 994 at 7.] Seymour does not seek to block the government's use of McGowan's interview statements on November 30.

Seymour's argument invokes the doctrine announced in *Wong Sun v. United States*, 371 U.S. 471 (1963), in which the Supreme Court held that the government is not

2

entitled to use either physical or testimonial evidence acquired only as a result, whether directly or indirectly, of an unlawful search or seizure. *Id*. at 485. *See also McDaniel v. Polley*, 847 F.3d 887, 894 (7th Cir. 2017). The government responds that this tainted fruit doctrine is inapplicable here: "a violation of *Miranda* does not result in the same 'fruit of the poisonous tree' analysis as a Fourth Amendment violation, and the subsequent testimonial statements of a party whose rights have not been violated (McGowan) are admissible at trial." [DE 991 at 5.] For this assertion the government cites *United States v. Patane*, 542 U.S. 630 (2004). Justice Thomas's plurality opinion in *Patane* held that the physical fruit of unwarned but voluntary statements does not have to be suppressed. *United States v. Patane*, 542 U.S. 630, 636, 643-44 (2004).

The *Patane* plurality also pointed out that *Wong Sun* does not apply to mere failures to give *Miranda* warnings: "The *Miranda* rule is not a code of police conduct, and police do not violate the Constitution (or even the *Miranda* rule, for that matter) by mere failure to warn. For this reason, the exclusionary rule articulated in cases such as *Wong Son* does not apply." *Id*. at 637. *See also id*. at 642-43. Instead, Justice Thomas says that the Self-Incrimination Clause of the Constitution "contains its own exclusionary rule that automatically protects those subjected to coercive police interrogations from the use of their involuntary statements (or evidence derived from their statements) in any subsequent criminal trial." *Id*. at 631.

Because it presents a plurality decision, I have reviewed how the courts have considered and applied the holding and reasoning of *Patane* in the more than 17 years

3

since its issuance. Since *Patane* was issued in 2004, the Supreme Court has not revisited the plurality's holding with any additional discussion or criticism. The Seventh Circuit has cited *Patane* only a handful of times, never questioning the plurality decision. *See, e.g., United States v. Renken*, 474 F.3d 984, 987-88 (7th Cir. 2007) ("[U]nder *United States v. Patane*...the failure to give *Miranda* warnings does not require the exclusion of evidence collected after a defendant gives a voluntary consent to search."). *See also United States v. Swanson*, 635 F.3d 995, 1001–02 (7th Cir. 2011); United States v. Bustamante, 367 F. App'x 708, 710 (7th Cir. 2010); *United States v. Peterson*, 414 F.3d 825, 827–28 (7th Cir. 2005); *United States v. Johnson*, 415 F.3d 728, 730 (7th Cir. 2005); *United States v. Stewart*, 388 F.3d 1079, 1088 (7th Cir. 2004).[1]

Under the *Patane* decision, Seymour's principal argument in support of suppression is without merit, because the fruit of the poisonous tree doctrine does not apply to the context of Seymour's statements that were suppressed for lack of required *Miranda* warnings. Because his tainted fruit argument is a non-starter, I do not need to discuss the possible application of exceptions, such as those based on the inevitable discovery of McGowan's December 2 statements or the existence of an independent

---

[1] All the Circuit Courts of Appeal have applied the holding of *Patane*'s plurality that *Miranda* does not require the exclusion of physical evidence discovered on the basis of a voluntary, although unwarned, statement. *See, e.g., United States v. Hinkley*, 803 F.3d 85, 91 (1st Cir. 2015); *United States v. McCoy*, 407 Fed.Appx. 514, 516 (2nd Cir. 2010); *United States v. Ross*, 113 Fed.Appx. 884, 884-85 (10th Cir. 2004); *United States v. Latz*, 162 Fed.Appx. 113, 118 (3rd Cir. 2005); *United States v. Oloyede*, 933 F.3d 302, 309-310 (4th Cir. 2019); *United States v. Brathwaite*, 458 F.3d 376, 382 n.7 (5th Cir. 2006); *United States v. Mitchell*, 2021 WL 4621868 (6th Cir. Oct. 7, 2021); *Patane* in *United States v. Morse*, 569 F.3d 882, 884-85 (8th Cir. 2009); *Tekoh v. Cty. of Los Angeles*, No. 18-56414, 2021 WL 139725 (9th Cir. Jan. 15, 2021), *cert. granted sub nom. Vega v. Tekoh*, 142 S. Ct. 858 (2022); *United States v. Ross*, 113 Fed.Appx. 884, 884-85 (10th Cir. 2004); *United States v. Jackson*, 506 F.3d 1358, 1361 (11th Cir. 2007).

source for the police obtaining them. *See Ross*, 113 Fed.Appx. at 887 ("Since we hold that the officers' violation of *Miranda* did not taint Defendant's criminal history information as fruit of the poisonous tree, we decline to address the parties' arguments on the independent source doctrine or on the reach of *Leon*'s good faith rule."); *United States v. McDonald*, 183 Fed.Appx. 700, 703 (9th Cir. 2006)( Gould, J., concurring) (because the question whether the fruits doctrine applies at all is logically antecedent, the court need not reach the questions of independent source and inevitable discovery).

*Patane* highlights the significance of whether Seymour's now-suppressed statements were voluntary or coerced. This is not an issue addressed in Seymour's motion, in which the argument for suppression is based entirely on the fruit of the poisonous tree doctrine, which I find does not apply in the context of un-*Mirandized* statements. The government asserts that in my opinion suppressing Seymour's statements I "correctly made no determination on the voluntariness of Defendant's statements since that question was not legally relevant to that opinion," and that "Defendant does not renew his voluntariness argument here." [DE 991 at 7, n.1.] Seymour argues belatedly in his reply that I previously held his statements on December 1 were involuntary, but I did not. My February 4, 2021 opinion holds only that, while at the police station, Seymour was in custody for purposes of *Miranda*, not that his unwarned statements were coerced. [DE 824.]

Ultimately the defense summarily contends in reply that "the government can make no credible argument that Seymour's statements were in any sense, voluntary."

5

[DE 994 at 3.] But the motion and the burden are Seymour's, not the government's. "It is a well established rule that the burden is on the movant to make specific factual allegations of illegality, to produce evidence and persuade the court that the evidence should be suppressed." *United States v. Zambrano*, No. 1:20-CR-00049, 2021 WL 3709194, at *5 (N.D. Ill. Aug. 21, 2021), quoting *United States v. Madison*, 689 F.2d 1300, 1308 (7th Cir. 1982). I have found Seymour's principal argument for suppression to be without merit, and the argument he makes only in reply, that the statements were involuntary as well as unwarned, is made too late for the government to respond, and without adequate development. *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 636 (7th Cir. 2018) (arguments raised for the first time in a reply brief are waived).

Seymour has not met his burden of demonstrating that McGowan's statements are subject to suppression, and the motion will be denied.

ACCORDINGLY:

Defendant Keenan Seymour's Motion to Suppress All Statements and Admissions Made by Deandre McGowan to the Chicago Police and Cook County State's Attorney on December 2, 2017 [DE 983] is DENIED.

SO ORDERED.

ENTERED: February 10, 2022.

/s/ Philip P. Simon
UNITED STATES DISTRICT JUDGE